**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| DARRIN JOHNSON JR.,<br>Plaintiff,<br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a<br>MR. COOPER, et al.,<br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>* | Case No.: 1:25-CV-00855-JRR |

---

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS (ECF 53)</u>**

Plaintiff Darrin Johnson Jr. ("Plaintiff"), opposing Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar")'s Motion to Dismiss the Second Amended Complaint ("SAC"), respectfully submits this Memorandum in Opposition and states as follows:

## INTRODUCTION

Plaintiff opposes Nationstar's Motion to Dismiss and requests that the Court deny the Motion in its entirety. Plaintiff's Second Amended Complaint ("SAC") sets forth detailed, fact-based allegations demonstrating Nationstar's unlawful servicing, deceptive conduct, and clouding of title. Nationstar has an extensive history of large settlements related to systemic servicing violations, including improper oversight of transferred loans and fee abuses, which strongly supports the plausibility of the misconduct alleged herein. Contrary to Nationstar's characterization, the SAC meets the facial plausibility standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Each claim is supported by specific exhibits, communications, and transactions evidencing actual injury, including unauthorized legal fees, improper insurance placement, and foreclosure threats based on a disputed and an incompletely endorsed note.

**The alleged coordinated scheme to impose force-placed insurance is reinforced by the directly contradictory positions of the Defendants:** Nationstar asserted it had received and paid for a Progressive policy (SAC Ex. 14), while Progressive has since denied issuing any such duplicate policy (Opp. Progressive MTD Ex. B). This inconsistency constitutes a material misrepresentation used by Nationstar to inflate Plaintiff's debt/default.

Nationstar begins its memorandum with a misplaced reference suggesting “sovereign-citizen” reasoning. That assertion is false and irrelevant. Plaintiff invokes no such theory and relies solely on statutory and equitable causes of action under federal and Maryland law, supported by documentary exhibits and controlling case law. This labeling attempt is a distraction from the substance of Nationstar’s own misconduct and should be disregarded.

**I. Plaintiff Pleads a Justiciable Controversy and Concrete Injury.**

Nationstar’s argument that Plaintiff seeks an “advisory opinion” is incorrect. The SAC pleads concrete and particularized harm sufficient for Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Nationstar’s reliance on exhibits does not contradict the SAC but highlights factual disputes precluding dismissal under *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016).

**A. Wrongful Force-Placed Insurance and Unauthorized Legal Fees.**

Nationstar’s duplicative and unnecessary insurance placement, imposed despite Plaintiff’s procurement of coverage, inflated his escrow and debt balance. Whether the FPI premiums are excessive or not, the imposition of this cost and its addition to the perceived outstanding balance constitutes direct economic harm because Nationstar has failed to establish its legal standing to

collect any amount, rendering the entire charge unauthorized. Furthermore, the foundation of this charge—Nationstar's assertion that it "received and paid a new insurance policy" from Progressive (SAC Ex. 14)—is directly contradicted by Progressive's regulatory denial (Opp. Progressive MTD Ex. B), creating an irreconcilable factual dispute concerning the validity of the debt added to Plaintiff's account. Likewise, Nationstar added unauthorized legal fees (SAC Ex. 21) that arose from its own litigation activities—not any servicing obligation. These actions produced direct economic harm. See *Cooke v. Carrington Mortg. Servs.*, No. 22-1425 (4th Cir. 2023) (holding that servicer-imposed charges tied to improper insurance placement constitute a concrete injury).

**B. Imminent Foreclosure and Clouded Title.**

Nationstar's issuance of a Notice of Intent to Foreclose and referral to foreclosure (SAC ¶ 9, Exs. 11 & 22) despite lacking proof of ownership or endorsement presents an immediate and legally cognizable risk of property loss and title impairment. Plaintiff's $106,388 equity constitutes a tangible interest threatened by Nationstar's conduct. See *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149 (2021) (requiring servicers to establish standing before foreclosure). See also *Deutsche Bank Nat'l Tr. Co. v. Brock*, 430 Md. 714 (2013) (preemptive quiet title actions are valid when threats are concrete). This is not a hypothetical advisory opinion; Nationstar's actions create an imminent controversy under *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). See also *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195 (4th Cir. 2014) (ripeness satisfied in mortgage disputes with imminent harm from notices); *Select Portfolio Servicing, Inc. v. Saddlebrook W., LLC*, 229 Md. App. 241 (2016) (declaratory judgment ripe for lien validity challenges with concrete threats).

**C. Nationstar's Systemic Violations and Regulatory Non-Compliance Demonstrate a Pattern of Bad Faith.**

The misconduct alleged in the SAC is not an isolated error but part of a demonstrable pattern of systematic bad faith. This pattern is confirmed by a Consumer Financial Protection Bureau (CFPB) complaint filed by Plaintiff on September 25, 2025 (Exhibit B to this Opposition), which details Nationstar's ongoing, company-wide violations. These include: (1) Systematic RESPA Violations, **including the creation of a false loss mitigation application and subsequent false denial of foreclosure alternatives on June 17, 2025, a systemic misrepresentation Plaintiff attempted to correct via QWRs;** (2) Illegal Force-Placed Insurance Practices, imposing coverage without providing the required 45-day advance notices as mandated by 12 C.F.R. § 1024.37 , a practice enabled by Progressive's coordinated cancellation; and (3) Wrongful Foreclosure Threats, initiating proceedings based on **a disputed default status and inflated debt amount resulting from Nationstar's imposition of improper charges (unauthorized fees and FPI) and its refusal to provide the original endorsed note necessary to rectify the standing dispute and validate the debt.** Nationstar's conduct is particularly egregious as it filed this Motion to Dismiss (October 30, 2025) while a direct regulatory channel for resolving the standing dispute was pending and delivered to Nationstar on November 5, 2025. Nationstar's choice to aggressively pursue litigation and foreclose, rather than use the regulatory period to provide the validation required to settle the dispute, underscores its bad faith preference for litigation over validating its authority to collect. Furthermore, Nationstar's November 17, 2025, response to the CFPB (Opp. Ex. C) reinforces this pattern by claiming the validation requests are "duplicative" under RESPA, thereby using a narrow procedural defense to evade its broader legal obligation to prove standing under Maryland Commercial Law.

**II. Nationstar Qualifies as a "Debt Collector" Under the FDCPA Based on Its Conduct.**

Nationstar's exemption argument—that it is a loan servicer rather than a debt collector—misstates the law. While an entity servicing a loan not in default may initially be exempt under 15 U.S.C. § 1692a(6)(F)(iii), courts have held that subsequent collection activity involving a **disputed debt** can trigger FDCPA coverage. Nationstar's conduct—sending debt-collection notices, imposing legal fees (SAC Ex. 21), initiating foreclosure threats (SAC Ex. 22), and procuring foreclosure counsel *Orlans Law Group PLLC* (ECF 31 Ex. 25)—falls within the statutory definition when the loan is in default. See *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 266-67 (3d Cir. 2019) (status determined by present conduct); *Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370, 374 (4th Cir. 2022) (entities acting to enforce disputed debts may qualify as debt collectors). See also *Koontz v. SN Servicing Corp.*, No. 24-1261 (4th Cir. Apr. 4, 2025) (holding that FDCPA applies to mortgage servicers enforcing liens post-bankruptcy discharge, confirming broad applicability to disputed debts).

**III. The FDCPA and MCPA Claims Are Pled with Specificity.**

The SAC identifies the precise documents and misrepresentations forming the basis of each statutory violation.

**A. Misrepresentations – 15 U.S.C. § 1692e.**

Nationstar misrepresented its legal authority by:

1. Threatening foreclosure while failing to produce the original endorsed note, and
2. Recording an assignment of the Deed of Trust only after litigation commenced—an act implying retroactive security interest.

These allegations directly mirror the enforcement deficiencies discussed in *Anderson v. Burson*, 424 Md. 232, 244 (2011). Nationstar's validation responses (SAC Exs. 2, 8) are insufficient, providing only copies without proof of possession, violating *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) (requiring meaningful verification). See also *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487 (4th Cir. 2014) (validation notices must not mislead or require written disputes); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014) (insufficient validation leads to liability under §1692g). The failure to produce the endorsed note creates a **false belief** in the consumer regarding Nationstar's authority, directly supporting an FDCPA claim under 15 U.S.C. § 1692j (deceptive forms).

**B. Unfair Practices – 15 U.S.C. § 1692f.**

Nationstar's conduct was "unfair and unconscionable" in that it:

1. Charged legal fees associated with a foreclosure process it had no standing to pursue; and
2. Force-placed unnecessary insurance for a property already insured by Plaintiff, inflating escrow and debt.

Both acts constitute unlawful attempts to collect sums not authorized by contract or law. See *Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370 (4th Cir. 2022) (servicers liable for FDCPA-violative conduct even post-discharge). The Deed of Trust (SAC Ex. 2) does not authorize fees for invalid enforcement or duplicative insurance, creating factual disputes precluding dismissal.

**C. Maryland Consumer Protection Act (MCPA).**

These same factual misrepresentations—false foreclosure authority, inflated escrow through duplicative insurance, and unlawful fees—constitute deceptive trade practices under Md. Code

Ann., Com. Law §§ 13-301(1), (3). Furthermore, Nationstar's attempt to enforce a debt while unable to prove its status as a "person entitled to enforce" the note is a direct violation of the Maryland Consumer Debt Collection Act (MCDCA) for claiming or attempting to enforce a right *with knowledge that the right does not exist*. The SAC satisfies Rule 9(b) by citing the specific foreclosure notices (Exs. 11 & 22) and billing statements (Ex. 21) showing the exact deceptive communications. See *Assanah-Carroll v. Maher*, 480 Md. 394 (2022) (deceptive omissions actionable under MCPA). Nationstar's reliance on *Klein v. State*, 52 Md. App. 640 (1982) is misplaced; the SAC pleads deception through specific acts, not mere conclusions.

**IV. UCC and Quiet Title Claims Are Ripe and Legally Sound.**

**A. UCC (Count V).**

Plaintiff seeks a declaration of current rights under Md. Code Ann., Com. Law § 3-301—not an advisory opinion. The chain of title gap between Flagstar Bank and Nationstar, coupled with the post-litigation assignment, creates a live controversy regarding who is entitled to enforce the note. Nationstar's argument that Md. Rule 14-207(b)(3) permits foreclosure merely by filing a copy of the note **confuses compliance with foreclosure docketing procedures with establishing substantive legal standing under the UCC**. The latter requires proof of being the "person entitled to enforce" the instrument. Nationstar's November 17, 2025, CFPB response (Opp. Ex. C) explicitly states they sent copies for "verification" but **refused to provide the original Note or an in-person meeting**, thereby demonstrating their refusal to comply with the legal standard required for enforcement, not just compliance with regulatory verification. The MERS inactive status (Exhibit A to this Opposition) further undermines Nationstar's standing, as inactive MINs indicate the loan is no longer registered, potentially breaking the chain of title. See *Anderson v. Burson*, 424 Md. 232, 244 (2011) (only the person entitled to enforce may act).

See also *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79 (Maine 2010) (MERS lacks standing to foreclose as nominee when inactive or without beneficial interest). Nationstar's copies (SAC Exs. 2, 8) do not prove possession, as required for enforcement.

**B. Quiet Title (Count VI).**

Nationstar's argument that Plaintiff lacks legal title misreads § 14-108. As the property owner in actual peaceable possession, Plaintiff may seek to remove a cloud created by a disputed lien. The recorded Deed of Trust, combined with an assignment executed after litigation began, constitutes a present encumbrance subject to challenge. See *Jones v. Bank of N.Y. Mellon*, No. 13-3005, 2014 WL 3778685 (D. Md. July 29, 2014); see also *Deutsche Bank Nat'l Tr. Co. v. Brock*, 430 Md. 714 (2013) (preemptive relief valid for defective liens). *Porter v. Schaffer*, 126 Md. App. 237 (1999) supports Plaintiff's standing as possessor. The alleged defects in Nationstar's authority (missing endorsement, post-litigation assignment) challenge the validity of the lien *ab initio*, rendering the lien void and subject to a quiet title action.

**V. Punitive and Injunctive Relief Are Properly Pled.**

While punitive damages require proof of malice, Plaintiff's allegations of deliberate misrepresentation, false foreclosure initiation, and financial injury meet the plausibility threshold at this stage. Nationstar's documented history of systemic misconduct and multi-million-dollar settlements for servicing errors and oversight failures provides a basis to infer reckless indifference or bad faith in the current matter. See *Savaria v. Select Portfolio Servicing*, 2014 WL 2865798 (D. Md. June 23, 2014); *Owens-Illinois v. Zenobia*, 325 Md. 420 (1992) (malice via pattern of misconduct).

The request for injunctive relief—halting enforcement actions until Nationstar proves possession of the original note—is narrowly tailored to prevent irreparable harm (property loss) and supported by *Winter v. NRDC*, 555 U.S. 7 (2008).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Nationstar's Motion to Dismiss (ECF 53) in its entirety and permit the case to proceed to discovery.

Respectfully,

Darrin L. Johnson Jr., Plaintiff, pro Se
1120 Homewood Ave
Baltimore, MD 21202
302-217-0217 | Dljohns6@gmail.com

*Plaintiff's signature will remain compliant with the **Federal Rules of Civil Procedure (FRCP)**, all CM/ECF, and local filing requirements.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2025, the foregoing *PLAINTIFF'S OPPOSITION TO DEFENDANT NATIONSTAR'S MOTION TO DISMISS (ECF 53)* including Exhibits A, B, and C was served electronically via EDSS/CM-ECF, serving all counsel of record.

**Dated:** November 24, 2025

Respectfully,

Darrin L. Johnson Jr., Plaintiff, pro Se
1120 Homewood Ave
Baltimore, MD 21202
302-217-0217 | Dljohns6@gmail.com