**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DARRIN L. JOHNSON, JR.,

   *Plaintiff*,

  v.

NATIONSTAR MORTGAGE, LLC, *et al.*,

   *Defendants*.

Civil No.: 1:25-cv-00855-JRR

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court is *pro se* Plaintiff Darrin Johnson Jr.'s Motion for Preliminary Injunction and supplement thereto. (ECF Nos. 64 and 65, the "Motion.") No hearing is necessary. Local Rule 105.6 (D. Md. 2025).

**I.  BACKGROUND**

Plaintiff initiated this action against Defendants Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") and Progressive Insurance d/b/a American Strategic Insurance Corporation ("Progressive") on January 7, 2025, in the Circuit Court for Baltimore City. (ECF No. 1-1; ECF No. 4.) Shortly thereafter, he amended his complaint. (ECF No. 1-1; ECF No. 5.) Nationstar, with Progressive's consent, removed the action to this court on March 14, 2025. (ECF No. 1.) On March 20, 2025, Plaintiff filed another Amended Complaint. (ECF No. 14.) On April 25, 2025, Plaintiff filed a motion for leave to file a Second Amended Complaint, which the court granted on October 16, 2025. (ECF No. 49.) The now-operative Second Amended Complaint was docketed on the same day. (ECF No. 50.)

Plaintiff alleges that this action arises from Defendants' "coordinated misconduct resulting in deceptive debt collection, unjustified cancellation of insurance coverage, and wrongful attempts

to enforce a mortgage debt without standing." (ECF No. 50 ¶ 1.) His allegations relate to Nationstar's "legal standing to collect or enforce the [mortgage] debt" and Progressive's cancellation of his homeowner's insurance policy. *Id.* ¶¶ 6–11.

Plaintiff asserts six counts in the Second Amended Complaint:

> Count I: "Declaratory Relief" pursuant to 28 U.S.C. § 2201 against Nationstar;
> Count II: Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.,* against both Defendants;
> Count III: Violation of the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 13-101, *et seq.,* against both Defendants;
> Count IV: "Breach of Contract and Bad Faith" against Progressive;
> Count V: Violations of Maryland's Uniform Commercial Code, MD. CODE ANN., COM. LAW § 3-301, *et seq.* against Nationstar; and
> Count VI: "Quiet Title" pursuant to MD. CODE ANN., REAL PROP. § 14-108 against Nationstar

(ECF No. 50 ¶¶ 11–19.)

In response to Plaintiff's Second Amended Complaint, each Defendant filed a motion to dismiss; these motions have been fully briefed and remain pending. (ECF Nos. 53 and 55.) On January 13, 2026, Plaintiff filed the instant Motion, seeking a preliminary injunction enjoining Defendant Nationstar "from pursuing foreclosure or other adverse actions related to the mortgage loan at issue, pending final adjudication of this action." (ECF No. 64 at p. 1.) Specifically, Plaintiff seeks a preliminary injunction order:

> (1) Enjoining Defendant [Nationstar], its agents, attorneys, successors, and assigns from initiating, continuing, or conducting any foreclosure proceeding, trustee's sale, or similar action against the property located at 1120 Homewood Avenue, Baltimore, Maryland 21202 [(the "Property")];
> (2) Enjoining Defendant [Nationstar] from furnishing or causing to be furnished any adverse credit reporting concerning the subject loan to any consumer reporting agency;
> (3) Enjoining Defendant Nationstar from disbursing funds from Plaintiff's escrow account for "force-placed" insurance or other

discretionary, non-mandatory charges pending adjudication of Defendant's authority to enforce the loan;
(4) Directing Nationstar to either:
    (a) produce the original wet-ink Promissory Note for inspection by the [c]ourt; or
    (b) certify under oath that it does not possess the original Note and identify the entity that does; and
(5) Granting additional relief the court deems just and proper.

*Id.* at p. 2 ¶¶ 1–5. Nationstar filed a response in opposition to the Motion on January 27, 2026 (ECF No. 66), and Plaintiff filed a reply in support of his Motion on January 28, 2026. (ECF No. 67.)

## II.    <u>LEGAL STANDARD</u>

"A preliminary injunction is 'an extraordinary remedy' that 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Pierce v. N. Carolina State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (noting that "a preliminary injunction is 'an extraordinary remedy never awarded as of right'"). As such, preliminary injunctive relief is to be "granted only sparingly and in limited circumstances." *St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, 566 F. Supp. 3d 327, 351 (D. Md. 2021), *aff'd,* No. 21-2158, 2021 WL 6502219 (4th Cir. Nov. 3, 2021), and *aff'd,* No. 21-2206, 2021 WL 6502220 (4th Cir. Nov. 13, 2021) (quoting *Micro Strategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)).

A plaintiff seeking preliminary injunctive relief "must establish that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm absent preliminary relief; 3) the balance of the equities favors the requested injunctive relief; and 4) that relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 170–71 (4th Cir. 2019)).

These factors were established by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). "[P]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citing cases); *see St. Michael's Media, Inc.*, 566 F. Supp. 3d at 351 (same).

III.    **ANALYSIS**

Based on the allegations and information in the Motion, Plaintiff is unable to demonstrate, at the very least, that he is likely to suffer irreparable harm absent the requested preliminary injunctive relief. "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). "Irreparable" means that the harm "cannot be rectified by the final judgment after trial." *Id.* (quoting *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 680 (7th Cir. 2012)).

Plaintiff asserts he will suffer irreparable harm absent an injunction because "[f]oreclosure results in the loss of unique real property . . . [and] [o]ngoing adverse credit reporting also inflicts lasting injury to Plaintiff's reputation and access to credit." (ECF No. 64-1 at p. 6.) Plaintiff further asserts, absent citation to legal authority, that "[w]here foreclosure is threatened and standing or the accuracy of the debt is materially disputed, courts routinely find irreparable harm and issue injunctive relief to prevent irreversible loss of real property pending adjudication." (ECF No. 64-1 at p. 4.) To the contrary, and relevant here, courts in this district routinely find there is no risk of actual or imminent harm when foreclosure proceedings have not commenced. *See, e.g., McClain v. Wells Fargo Co.*, No. CV TDC-17-1094, 2017 WL 4876200, at *2 (D. Md. June 5,

2017) (holding that "[b]ecause no foreclosure is imminent, [the plaintiff] cannot establish that she will suffer irreparable harm in the absence of preliminary relief."); *Parker v. Am. Brokers Conduit,* No. CV JKB-15-3652, 2015 WL 7751664, at *2 (D. Md. Dec. 1, 2015) (finding plaintiff failed to demonstrate irreparable harm because it was unclear from the face of his complaint whether foreclosure proceedings had commenced); *Luther v. Wells Fargo Bank, N.A.*, No. 4:13CV00072, 2014 WL 43694, at *2 (W.D. Va. Jan. 6, 2014) (denying injunctive relief where court could not find plaintiff at risk of actual and imminent harm because no foreclosure sale was pending).

Here, Plaintiff avers that Defendant Nationwide has merely "referred the loan to foreclosure as of January 30, 2025." (ECF No. 64 at p. 4.) In fact, a letter of July 1, 2025, from Mr. Cooper[1] (attached as an exhibit to Plaintiff's Motion), provides that while Plaintiff's mortgage loan account was referred to foreclosure on January 30, 2025, "[i]t is important to note that . . . the foreclosure referral is currently on hold[.]" (Ex. A, ECF No. 64-3 at p. 4.) Although the letter provides that "this status is subject to change[]," Plaintiff does not allege adequate facts, nor does he offer adequate exhibits, to show that a foreclosure proceeding has actually been commenced by Nationwide. *Id.* In its response to the Motion, Defendant Nationwide confirms "[t]here is no pending foreclosure case [and] an Order to Docket has not been filed[]" in a Maryland state court. (ECF No. 66 at p. 9.)

Second, Plaintiff asserts he will suffer irreparable harm absent an injunction because "[o]ngoing adverse credit reporting also inflicts lasting injury to Plaintiff's reputation and access to credit." (ECF No. 64-1 at p. 6.) Plaintiff provides no factual allegations as to when, how, or to whom Defendant Nationwide has made adverse credit reports. Regardless, ongoing adverse credit reporting would not rise to the level of imminent irreparable harm necessary to support the

---

[1] "Mr. Cooper is a brand name for Nationstar Mortgage LLC[,]" the mortgage lender Defendant in this action. (ECF No. 64-3 at p. 3.)

requested relief. *C.f. Shelton v. Klima, Peters & Daly, P.A.*, No. CV DLB-24-1068, 2025 WL 1311731, at *5 (D. Md. May 6, 2025) (finding plaintiff failed to show how continued [adverse credit] reporting would cause harm distinct from harm allegedly already suffered by plaintiff where defendant had already reported a default for the subject debt to credit bureaus). Insofar as Plaintiff also requests an order (1) enjoining Nationstar from disbursing funds from Plaintiff's escrow account and (2) directing Nationstar to produce the original wet-ink Promissory Note for inspection by the court (or certify under oath that it does not possess the original Note and identify the entity that does), Plaintiff offers no allegation or evidence as to what harm, if any, he might face absent such relief.

The court notes, additionally, that even if Plaintiff had shown that he faces immediate and irreparable injury, loss, or damage, this court lacks jurisdiction to order some of the relief he appears to seek. To the extent Plaintiff seeks to enjoin any future state court proceedings related to the Property, under the Anti-Injunction Act, 28 U.S.C. § 2283, this court lacks jurisdiction to grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As it stands, Plaintiff has not alleged specific facts to clearly show that he faces immediate and irreparable injury, loss, or damage. Plaintiff has thus not met his burden under Rule 65 and binding case law and, accordingly, a preliminary injunction is not appropriate at this juncture.[2]

## IV.    ADMONITION CONCERNING CITATION OF HALLUCINATED AUTHORITY

As an unrelated matter, upon review of Plaintiff's filings, the court was unable to locate the following case cited in Plaintiff's Motion and reply in support of same: *Jefferson v. U.S. Bank*,

---

[2] The Court declines to address the remaining *Winter* factors.

2020 WL 5500414, at *7 (D. Md. Sept. 11, 2020).  (ECF No. 64-1 at p. 6; ECF No. 67 at p. 4.)

Plaintiff cites this non-existent case for the proposition that "[t]he loss of one's home is an irreparable injury that cannot be adequately compensated by monetary damages." *Id.*  The court notes that, when entered into the Westlaw database, the citation provided by Plaintiff yields no results.  It appears the citation may be a "hallucinated" case citation derived from the use of a generative artificial intelligence ("AI") tool (*e.g.*, ChatGPT, Gemini, etc.).[3]

Federal Rule of Civil Procedure 11 requires unrepresented parties and attorneys "to certify, on the basis of a reasonable inquiry, that any pleading or paper they file with a district court (1) is not filed 'for any improper purpose'; (2) is 'warranted by existing law'; and (3) alleges facts that 'have evidentiary support.'" *Lokhova v. Halper*, 30 F.4th 349, 354 (4th Cir. 2022) (quoting FED. R. CIV. P. 11(b)).  This court may, in its discretion, impose sanctions for violations of Rule 11. FED. R. CIV. P. 11(c).  "While pro se pleadings and filings are granted a degree of indulgence not extended to lawyers when a court considers the imposition of Rule 11 sanctions, pro se litigants must still abide by Rule 11, and they may be sanctioned for its violation." *Davis v. Infragard Nat'l Members All. Inc.*, No. 3:21-cv-00056-RJC-WCM, 2021 WL 5449017, at *2 (W.D.N.C. Nov. 22, 2021) (quoting *Johnson v. EEOC Charlotte District Office*, No. 3:15-cv-00148-RJC-DSC, 2016 WL 3514456, at * (W.D.N.C. June 27, 2016) (internal quotations omitted).  "[I]n exercising that discretion to impose sanctions for a pleading or paper's lack of legal support, the court must apply an objective standard, inquiring whether 'a reasonable attorney in like circumstances could not have believed his actions to be legally justified.'" *Lokhova*, 30 F.4th at 354 (quoting *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2022)).  To be sanctionable, a legal argument

---

[3] "Fake or nonexistent legal citations typically are the result of AI 'hallucinations.'" *Mezu v. Mezu*, 267 Md. App. 354, 368 (2025), *reconsideration denied* (Nov. 24, 2025), *cert. dismissed*, 493 Md. 184 (2026) (quoting *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 911 (Cal. App. 2025)).

must have "absolutely no chance of success under the existing precedent." *Hunter*, 281 F.3d at 153.

"Courts within the Fourth Circuit have issued *sua sponte* show cause orders where a party appears to have 'cited to fictitious cases and misrepresented the holding of various cases' in a filing." *Neal v. Frayer*, No. CV 24-0778-BAH, 2025 WL 3204710, at *14 (D. Md. Nov. 17, 2025) (citing *Kruglyak v. Home Depot U.S.A., Inc.*, 774 F. Supp. 3d 767, 770 (W.D. Va. 2025); *In re Richburg*, 671 B.R. 918, 921 (Bankr. D. S.C. 2025)).  The Fourth Circuit has held that "a court is obliged to use extra care" in issuing a *sua sponte* show cause order and has observed that the Advisory Committee Note to Rule 11's 1993 amendments "contemplated that a *sua sponte* show cause order would only be used 'in situations that are akin to a contempt of court.'" *Hunter*, 281 F.3d at 151 (italicization added) (quoting FED. R. CIV. P. 11 advisory committee's note to 1993 amendments).

As recently explained by this court regarding the use of AI tools, specifically by pro se parties:

> Although the use of AI tools for legal research or drafting is not inherently improper, Plaintiffs' avalanche of filings here, whether AI-generated or not, have burdened the Court, advanced frivolous arguments, misstated the record, and fabricated legal authorities. Parties bear responsibility for the filings they sign, regardless of actual authorship. *See LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 388 (D. Md. 2014) ("*[P]ro se* litigants[,] where appropriate, are still held to a basic standard of accountability for the contents of their court papers.").  This responsibility includes the duty to include accurate factual and legal citations. *See United States v. Malik*, Case No. 16-cr-324-JKB, 2025 WL 2687413, at *1 n.2 (D. Md. Sept. 19, 2025) ("While the Court affords *pro se* litigants substantial latitude in their filings, that does not provide permission to include nonexistent quotations and citations. In particular, when using generative artificial intelligence, litigants must be aware 'that such platforms sometimes 'hallucinate,' meaning they provide inaccurate responses.'") (quoting *Kruglyak v.*

*Home Depot U.S.A., Inc.*, 774 F. Supp. 3d 767, 770 (W.D. Va. 2025)).

*Aziz v. United States of America*, No. 26-CV-243-ABA, 2026 WL 1132884, at *3 (D. Md. Apr. 27, 2026). While Plaintiff here appears to have cited only one hallucinated case in his Motion papers, the court cautions Plaintiff (and the parties more generally) regarding use of generative AI tools in legal filings.

In this discrete instance, the court will not issue a Rule 11 show cause order as to Plaintiff's citation to a hallucinated case. Nevertheless, Plaintiff is strongly cautioned: should he engage in similar conduct in the future (*i.e.*, citation to hallucinated authorities or the like), the court may exercise its discretion to issue an order to show cause why he should not face sanctions under Rule 11.

## V.   <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Plaintiff has failed to meet the standard for a preliminary injunction pursuant to Rule 65. Accordingly, it is this 30th day of April 2026,

**ORDERED** that Plaintiff's Motion (ECF No. 64) shall be, is hereby, **DENIED**.

Madam Clerk shall transmit a copy of this memorandum opinion and order to Plaintiff.

/S/

_____
Julie R. Rubin
United States District Judge

9